**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x

ELIZABETH KLEIN and STEPHANIE MUHS,          Civil Case No. _____

                Plaintiffs,

                v.                              **COMPLAINT**

                                             **Jury Trial Demanded**

1STDIBS.COM, INC.,

                Defendant.
--------------------------------------------------------------------x

       Plaintiffs Elizabeth Klein ("Ms. Klein") and Stephanie Muhs ("Ms. Muhs", and, together with Ms. Klein, "Plaintiffs") by and through their undersigned counsel, Barton LLP, as and for their Complaint in this action against Defendant 1stdibs.com, Inc. ("1stdibs", the "Company", or "Defendant") hereby allege as follows:

**PRELIMINARY STATEMENT**

       *"[W]e may well be facing a generational wipeout of mothers' careers: research shows that when mothers leave the labor force it hurts their economic prospects for decades, often permanently. A society that pushes mothers out of their jobs is a society that impoverishes both mothers and children."[1]*

    1.    It has recently been commented that "[e]mployers are using the pandemic to get rid of mothers . . ."[2]  Plaintiffs are two such examples of this egregious and rampant practice.

    2.    Plaintiffs are both female former executives with 1stdibs whose employment was terminated, in the midst of a global pandemic, while pregnant, after each informed the Company that she would be requesting maternity leave and leave under the Family and Medical Leave Act of 1993 ("FMLA").

---

[1] Joan C. Williams, Opinion, "Real Life Horror Stories from the World of Pandemic Motherhood."  N.Y. TIMES, (Aug. 6, 2020), https://www.nytimes.com/2020/08/06/opinion/mothers-discrimination-coronavirus.html.
[2] *Id.*

3.      What should have been one of the most joyous times in Plaintiffs' respective lives, as they welcome new babies into their respective families, has been transformed into a demeaning and anxious ordeal by 1stdibs' retaliatory, discriminatory, and unlawful actions against them on account of their gender, pregnancy, and their requests for leave.

4.      Both Plaintiffs are now figuratively stranded in the midst of a global pandemic, one pregnant and the other having recently given birth, both with young children at home to care for, in the inconceivable position of seeking gainful employment due to 1stdibs' flagrant and unabashed sexism, anti-pregnancy animus, and blatant disregard of the protections afforded by the FMLA.

5.      1stdibs' operations are heavily underwritten by a pantheon of private equity investors.  While that deep private equity firm relationship may have transformed 1stdibs into the "darling" of the digitized luxury marketplace, it has also produced a workplace culture which, among other things, systemically and improperly favors single, non-pregnant women, women without children, or men – at the expense of the working mother.  Here, 1stdibs' fixation on the bottom line directly resulted in unlawful discrimination and retaliation. What's more, 1stdibs sacrificed empathy on the altar of efficiency by conducting termination meetings via Zoom conference, during which those queued-up to be fired listened in on a virtual runway conga line as their colleagues were informed their employment had been terminated.

6.      In late February 2020, Plaintiff Ms. Klein informed the Company she was pregnant with her second child.  (Ms. Klein was then working part-time as she was also pursuing a degree in Human Rights at Columbia University).  She reiterated her request to continue to work full-time until her due date in September and inquired about maternity leave.  In March 2020, without ever responding to her request for maternity leave, 1stdibs retaliated against Ms.

Klein by threatening to reduce her role and responsibilities to one (1) day per week. 1stdibs terminated Ms. Klein's employment entirely just one week later.

7.      As if the demotion was not enough, Ms. Klein, a seasoned sales executive, was pressured to and ultimately did have to hire a male, underperforming employee with little-to-no sales experience to the sales team, which she managed.  Not only is that employee presently still employed at 1stdibs, his wages were higher than Ms. Klein's were from October 2019 until her termination.

8.      Ms. Klein was not the only pregnant woman discriminated against by 1stdibs.  In October 2019, Plaintiff Stephanie Muhs informed the Company she too was pregnant with her second child.  In January 2020, Ms. Muhs informed the Company that her husband had been offered a new opportunity in Charlotte, North Carolina.  To ensure she could join her husband and that they could continue to raise their toddler together, Ms. Muhs submitted a written plan detailing a proposal for her to work-from-home out of Charlotte.  Her proposal included personally paying for her own travel expenses for regularly scheduled trips to and from the Company's New York headquarters.  Included with her proposal, Ms. Muhs also informed the Company in writing of her plan to begin maternity leave in May 2020 and return to work in August 2020.  1stdibs refused to approve her proposal unless Ms. Muhs switched to an independent contractor role, thereby forgoing the benefits that she and her family relied on. Consequently, Ms. Muhs made the difficult choice *not* to move to Charlotte and remain in New York City with their toddler and that her husband would make the move alone.

9.      To add insult to injury, while 1stdibs was unwilling to support Ms. Muhs, the experienced working mother, 1stdibs readily approved and aided transatlantic and coast-to-coast relocations of at least three other employees – all of whom were  single, non-pregnant women,

women without children, or men – not working mothers.  1stdibs approved these relocations shortly before terminating Ms. Muhs' employment.

10.    As a result of Defendant's unlawful treatment of Plaintiffs, they make this Complaint pursuant to the Family Medical Leave Act of 1993, 29 U.S.C.§§ 2601, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*

## ADMINISTRATIVE PREREQUISITES

11.    Plaintiffs Ms. Klein and Ms. Muhs have filed a charge of discrimination with the Equal Employment Opportunity ("EEOC") and will file an amended complaint alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000d *et seq.,* and as amended by the Pregnancy Discrimination Act ("PDA") following the EEOC's issuance of a Notice of Right Sue.

12.    After commencement of this action, a copy of this Complaint will be served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

13.    Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

14.    Plaintiff Elizabeth Klein is a resident of New York City. Ms. Klein was employed and worked from Defendant's offices in New York City.  At all relevant times, she met the definition of "employee" or "eligible employee" under all applicable statutes.

15.    Plaintiff Stephanie Muhs is now a resident of Charlotte, North Carolina.  At all relevant times, Ms. Muhs was a resident of New York City.  Ms. Muhs was employed and

worked from Defendant's offices in New York City.  At all relevant times, she met the definition of "employee" or "eligible employee" under all applicable statutes.

16.    Defendant 1stdibs.com, Inc. is a digitized luxury marketplace and at all relevant times had, among other things, offices in New York, New York.  1stdibs is a corporation organized and existing under the laws of Delaware with authority to do business in New York. At all relevant times, 1stdibs met the definition of "employer" under all applicable statutes.

## JURISDICTION AND VENUE

17.    The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because this claim arises under the laws of the United States.  Pursuant to § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' related to claims arising under State and local law.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions is giving rise to this action, including employment practices alleged herein, occurred in this district.

## FACTUAL ALLEGATIONS

**Background: Elizabeth Klein**

19.    Ms. Klein is a female, pregnant sales professional, and a successful working mother, with over twelve (12) combined years of deep and meaningful experience with sales, including extensive managerial experience.

20.    In July 2014, Ms. Klein brought her significant experience to 1stdibs as its first director of sales and tasked with creating and growing 1stdibs' first formal sales department.

21.    1stdibs is a luxury online marketplace, specializing in the sale of luxury items such as jewelry, fine art, high-end furniture and antiques.

22.     After a lucrative and highly touted round of venture capital funding, 1stdibs boasts a valuation of more than $500 million.

***Ms. Klein Excels in her Career at 1stdibs***

23.     Throughout her career at 1stdibs, Ms. Klein continuously and seamlessly managed a team of anywhere between 2 and 10 employees depending on project size. In or around 2017, Ms. Klein was asked to manage an entire advertising department in addition to the supply sales team, a clear marker of her professional upward trajectory and high regard within 1stdibs.

24.     Over the course of the nearly six (6) years she spent at 1stdibs, Ms. Klein worked diligently and tirelessly in her role as Sales Director.  By all accounts, she excelled in her role.

25.     In fact, during the entire six (6) years she spent with 1stdibs, Ms. Klein never received a single negative performance review, nor indeed even any partial negative feedback.

26.     Notably, from 2016 through October 2019 (when she switched to a part-time role), Ms. Klein handled a full-time workload with managerial responsibilities while taking challenging classes at Columbia University, in order to complete a degree in Human Rights. These classes were approved by her manager and the Chief Operating Officer of 1stdibs, Cristina Miller, and by the Chief Executive Officer, David Rosenblatt.

27.     Since classes through this particular program were not available during night and weekend hours, Ms. Klein, unwilling to sacrifice her growth and performance at 1stdibs, never limited her work hours, responding to emails and making herself available on evenings and weekends as necessary to make sure her work responsibilities were properly covered. Impressively, Ms. Klein successfully accomplished all of this from 2018 onward while **simultaneously caring for a newborn**.

28.     Ms. Klein returned from maternity leave in August 2018 following the birth of her first child.  Upon her return, she received approval from Ms. Miller to work remotely 1-2 days per week.

29.     In 2019, 1stdibs secured $76 million in Series D financing. Thereafter, in May 2019, 1stdibs reorganized the sales teams and direct reports, and Ms. Klein moved to an independent contributor role.  The genesis of this role change was initially to permit Ms. Klein more flexibility to work on individual projects and to focus on her classes at Columbia.

**Ms. Klein's Experience with Sexism and Pregnancy Discrimination at 1stdibs**

*On the Eve of Her Termination, Ms. Klein was Pressured to Transfer an Unqualified Male Employee onto Her Team*

30.     Around January 2020, a project Ms. Klein was working on was growing significantly in scope and complexity.  Ms. Klein was adding headcount and knew that other heads of teams would be going on maternity leave in early spring; therefore, she decided to speak with Ms. Miller about returning to full-time status in April or May. Ms. Miller agreed that, between other departments that needed coverage and the work on the main strategic sales partnerships project, there was more than enough work to comprise a full-time role for Ms. Klein. Ms. Miller promised to discuss it with Human Resources ("HR") and Mr. Rosenblatt.

31.     Concurrently, Ms. Klein was being pressured to hire a severely underperforming male account manager to her team. Significantly, his team needed to eliminate headcount, and, due to his tenure with 1stdibs, he was being encouraged to try out a sales position. This employee had very minimal sales experience and was on track to receive a negative performance review in March 2020 in his incumbent position.

32.     Ms. Klein expressed concerns about the Company transferring this underperforming male employee on her team, which included concerns over his lack of

eagerness to join initial sales meetings and over his ability to actually close deals. Despite Ms. Klein's objections, his poor performance, and lack of experience, the Company readily transferred him into the sales role with a mid-March start date, which was subsequently pushed to April 1st due to the COVID-19 pandemic.

33.     Incredibly, this employee's starting salary was **nearly equivalent** to Ms. Klein's, and, what's more, he was guaranteed two (2) full quarters of commission, which, along with full-time health benefits, put him overall in a **better** financial position than Ms. Klein, a working mother with over twelve (12) years of sales experience and six (6) successful years with 1stdibs.

***Ms. Klein Informs the Company of her Second Pregnancy and Upcoming Need for Maternity and FMLA Leave***

34.     In late February 2020 Ms. Klein informed Ms. Miller that she was pregnant with her second child. (Ms. Klein was then working part-time as she was also pursuing a Human Rights degree at Columbia University). She reiterated her request to work full-time between April through her due date in late September.

35.     At this time, Ms. Klein also inquired about the availability of maternity leave and FMLA leave. The Company never responded to Ms. Klein's inquiry about her future need for leave. Moreover, the Company never responded to her request to resume her full-time responsibilities as well.

***Ms. Klein was Retaliated Against and Her Role and Responsibilities were Reduced***

36.     In fact, Ms. Klein never heard back about her request to go full-time until she followed up with Ms. Miller on March 27, 2020, nearly two (2) months after she had made the request. She was then told that it would not be possible due to the COVID-19 pandemic. To make matters worse, Ms. Klein was told that her hours would likely be reduced even further. She was unaware of anyone else's hours being similarly reduced and despite inquiring, was

offered no rationale for this reduction save for a generic reference to a need to cut costs due to the COVID-19 pandemic.

37.    This threat of a further reduction in her role and responsibilities left Ms. Klein justifiably flabbergasted.  Indeed, while the Company had forced her to hire a poor performing, inexperienced, yet highly compensated male, Ms. Klein's own role and responsibilities as both a pregnant working mother soon slated for maternity leave, and  an extremely successful Sales Director with twelve (12) years of sales experience, were likely to be further reduced to an insulting one (1) day per week.

***Ms. Klein was Suddenly and Baselessly Terminated***

38.    In the most blatant display of 1stdibs' discrimination and disregard for pregnant female employees, on April 2, 2020, Ms. Klein was suddenly and abruptly laid off.

39.    The male employee she had been forced to hire, however, had started on Ms. Klein's former team the day before her termination, and **is currently still employed by the Company**.

40.    It is abundantly clear that the decision to fire Ms. Klein was not due to the global pandemic but due to 1stdibs' animus towards pregnant women and reluctance to provide maternity leave.

41.    Ms. Klein is now left searching for a new position with a young child at home during a global health crisis, while pregnant with her second child.

**Background: Stephanie Muhs**

42.    Ms. Muhs is a female events management professional who gave birth in early June 2020.  She has over ten (10) years of deep and meaningful experience with event organization, including extensive managerial experience.

43.    In August 2017, Ms. Muhs brought her significant experience to 1stdibs as a member of the events team.

***Ms. Muhs Excels in her Career at 1stdibs***

44.    Over the course of the nearly three (3) years she spent at 1stdibs, Ms. Muhs worked diligently and tirelessly in her roles as Events Manager and Senior Events Manager following her promotion in October 2019.

45.    Less than a year after her start date, in or about April 2018, Ms. Muhs spearheaded the first international standalone exhibition produced by 1stdibs, showcasing more than 50 pieces from individual artists and artisans worldwide.

46.    Ms. Muhs was equally as busy in 2019 and continued to perform at a very high level.  Indeed, during 2019 Ms. Muhs played a significant role in approximately seventy (70) events with a total budget of $1.5M. By way of example, in February 2019, Ms. Muhs had a significant role in preparing for 1stdibs' first gallery opening, the first retail storefront operated solely by 1stdibs.  This storefront featured a selection of global dealers and was kicked off by an opening event with more than 700 guests in attendance.  The storefront brought with it a steady stream of community and event programming, all run by the Events Marketing team and headed by Ms. Muhs.

47.    Later that year, in or around October 2019, Ms. Muhs took over the 2020 Planning and Budget for the Events Department and all event production, amounting to approximately five (5) events and one (1) exhibition, including first time events for a product category with jewelry.  Ms. Muhs managed all this while also handling direct reports for her supervisor, Emilia Vincent, while Ms. Vincent herself was on maternity leave.

48.     In short, during 2019, Ms. Muhs played a significant role in approximately seventy (70) events and a total budget of $1.5M. In October 2019, in recognition of her contributions, Ms. Muhs was promoted to Senior Events Manager and received a raise.

49.     In January 2020, Ms. Muhs was selected to be the **sole** representative from the Marketing Department to sit on an internal committee dedicated to employee satisfaction, one (1) of two (2) of such committees created, with its focus on internal communication.

50.     Notably, Ms. Muhs herself had been on maternity leave with her first child from May 16, 2018 through September 10, 2018, seamlessly transitioning back to work and proving herself to be an invaluable asset to 1stdibs.

***Ms. Muhs Discloses Her Second Pregnancy, Submits North Carolina Relocation Proposal to Management, and Informs the Company of her Upcoming Need for Maternity and FMLA Leave***

51.     In October 2019, Ms. Muhs shared with Ms. Vincent that she was pregnant with her second child, due at the end of May 2020.

52.     In January 2020, Ms. Muhs' husband received a new job opportunity in Charlotte, North Carolina. Given that Ms. Muhs spent so much time working outside of the 1stdibs brick-and-mortar office due to of the normal demands of her job, she broached the topic of working remotely from Charlotte with Ms. Vincent.

53.     In furtherance of that desire, Ms. Muhs submitted a written proposal to Ms. Vincent in late January 2020, to begin March or April 2020. Significantly, in a show of Ms. Muhs' genuine dedication to the Company, her proposal included personally financing her relocation as well as bearing the full personal expense of her regularly scheduled trips to 1stdibs' New York City headquarters.

54.     At this time, in January 2020, Ms. Muhs also inquired about the availability of maternity leave and FMLA leave. Specifically, as part of her written proposal to relocate to North Carolina, she also described her future need for maternity leave and FMLA leave beginning in May 2020 with a planned end to her leave scheduled for August 2020.

55.     Two or three weeks thereafter, Ms. Vincent expressed to Ms. Muhs that her proposal had support from 1stdibs' Chief Executive Officer, David Rosenblatt, and its Chief Marketing Officer, Nancy Hood.

56.     At or about this time, Ms. Vincent reiterated how impactful Ms. Muhs had become on the business and told her that 1stdibs was committed to figuring out an arrangement that would accommodate her and keep her at there.  Armed with this encouragement, Ms. Muhs contacted HR to work out the logistics of her relocation to Charlotte.

**Ms. Muhs' Experience with Sexism and Pregnancy Discrimination at 1stdibs**

*Ms. Muhs' Relocation Proposal Is Denied*

57.     Incredibly, Ms. Muhs was ultimately informed that her relocation would only be possible if she agreed to resign her position and become an independent contractor which would require her to give up the medical benefits on which her family depends.

58.     Confronted with that choice, Ms. Muhs abandoned her efforts to relocate to Charlotte and agreed to stay on as a full-time employee in New York while her husband would make the move alone, a decision that could not have come easily given that Ms. Muhs had a toddler at home and, at the time, another baby on the way (now a newborn).

59.     Most notably, no one at the Company replied to or even acknowledged receipt of Ms. Muhs' email withdrawing her relocation efforts and continuing with her working full-time in New York City.  Ms. Muhs, while initially troubled by this unresponsiveness and the lack of

regard it implies, put it in the back of her mind and focused on executing on the many events and programs she was charged with rolling out.

60.      This silence from management is similar to the silence Ms. Muhs was met with when she attempted to create a parent support group within 1stdibs, another blatant display of disregard for hardworking mothers seeking a modicum of company support to enable working mothers to meet regularly for mutual support and to share strategies for effectively managing the unique professional and personal demands they faced.

***Other Relocation Proposals of Male or Single Employees Are Approved***

61.      While Ms. Muhs' efforts to relocate to Charlotte, as a pregnant working mother whose family depended on her benefits, were denied by 1stdibs unless she made concessions which were untenable to her and her family's wellbeing, 1stdibs approved the transfer of other single employees without family obligations.

62.      By way of example only, in or about January 2020, a female seller support employee was transferred internationally from New York City to London.  In or about February 2020, a female trade sales employee was transferred from New York City to Los Angeles where 1stdibs did not have an office, but agreed to open one and anoint her as its first staff member.  In or about that same month, a male partner manager was readily transferred from New York City to London.

63.      1stdibs readily facilitated these intercompany moves for its single non-pregnant employees, but a thoughtful self-funded plan by a pregnant working mother could not be accommodated. **In fact, Ms. Muhs was never given any indication that her plan was ever even reviewed**.

***Ms. Muhs' Employment is Terminated***

64.    Nothing prepared Ms. Muhs for the termination of her employment and the callous manner in which it was communicated to her.

65.    Like Co-Plaintiff Ms. Klein, on April 2, 2020, Ms. Muhs was suddenly and abruptly terminated from employment by 1stdibs.

66.    Disappointingly, Ms. Muhs has since learned that other employees who were also terminated were notified differently, namely with personal calls ahead of the Zoom meeting with Mr. Rosenblatt. Perhaps more distressing was the fact that her termination meeting was "broadcasted" to other employees as she was fired while other employees (unbeknownst to her at the time) listened in to her termination meeting.

67.    Ms. Muhs is now left searching for a new position, having recently given birth, with a toddler at home, faced with the impossible task of seeking employment during a global health pandemic.

68.    In short, Defendant's underlying discriminatory conduct and retaliation has tarnished Plaintiffs' careers and disrupted their professional trajectories.

69.    Defendant's unlawful discrimination and retaliatory conduct has caused and continues to cause emotional distress and lasting professional and financial harm.

**FIRST CAUSE OF ACTION**
**(Interference in Violation of the FMLA)**

70.    Plaintiffs repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

71.    At all times relevant herein, Plaintiffs were each "employees" within the meaning of the FMLA. At all times relevant herein, Defendant 1stdibs was and constitutes an "employer" within the meaning of the FMLA.

14

72.     Defendant was obligated to provide Plaintiffs with FMLA leave and was not permitted to use the request for leave as a negative factor in employment actions.

73.     By the actions described above, among other things, Defendant violated the FMLA by unlawfully interfering with, restraining, or denying exercise of Plaintiffs' rights by, in*ter alia*, denying them equal terms and conditions of employment and benefits, including but not limited to terminating their employment.

74.     As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

75.     Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiffs are entitled to an award of liquidated damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the FMLA)

76.     Plaintiffs repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

77.     At all times relevant herein, Plaintiffs were each "employees" within the meaning of the FMLA. At all times relevant herein, Defendant 1stdibs was and constitutes an "employer" within the meaning of the FMLA.

78.     Defendant was obligated to provide Plaintiffs with FMLA leave and was not permitted to use the request for leave as a negative factor in employment actions.

79.     Defendant violated the FMLA by unlawfully retaliating against Plaintiffs for exercising rights protected by the FMLA by, *inter alia*, denying them equal terms and conditions of employment and benefits, including but not limited to terminating their employment, thereby

subjecting Plaintiffs to an adverse employment action that would reasonably dissuade a reasonable person from exercising rights protected by the FMLA.

80.     As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiffs have suffered and continue to suffer harm for which they entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

81.     Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiffs entitled to an award of liquidated damages.

## THIRD CAUSE OF ACTION
### (Discrimination Under the New York State Human Rights Law)

82.     Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

83.     Defendant discriminated against Plaintiffs on the basis of their gender and pregnancy in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq*. by subjecting them to disparate treatment based on their gender and pregnancy, including, *inter alia*, denying them equal terms and conditions of their employment, including but not limited to terminating their employment.

84.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of monetary damages and other relief.

85.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress for which they are entitled to an award of monetary damages and other relief.

86.    Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed deliberate, willful, wanton and reckless indifference to Plaintiffs' rights under the NYSHRL, for which Plaintiffs are entitled to an award of punitive damages.

87.    Plaintiffs are further entitled to reasonable costs and attorneys' fees.

### FOURTH CAUSE OF ACTION
### (Discrimination Under the New York City Human Rights Law)

88.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

89.    Defendant discriminated against Plaintiffs on the basis of their gender and pregnancy in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*, by subjecting them to disparate treatment based on their gender and pregnancy, including, but not limited to, denying them equal terms and conditions of their employment and terminating them while they worked in New York City.

90.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of monetary damages and other relief.

91.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of NYCHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress for which they are entitled to an award of monetary damages and other relief.

92.    Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed deliberate, willful, wanton and reckless indifference to Plaintiffs' rights under the NYCHRL, for which Plaintiffs are entitled to an award of punitive damages.

93.    Plaintiffs are further entitled to reasonable costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Retaliation Under the New York State Human Rights Law)

94.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

95.    By the actions described above, among others, Defendant retaliated against Plaintiffs by, *inter alia*, denying them equal terms and conditions of employment, including, *inter alia*, terminating Plaintiffs due to their engaging in protected activity of discussing and requesting leave available to Plaintiffs because of their gender and pregnancy.

96.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law.

97.    Defendants' unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYSHRL for which Plaintiffs are entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation Under the New York City Human Rights Law)

98.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

99.    By the actions described above, among others, Defendant retaliated against Plaintiffs by, *inter alia*, denying them equal terms and conditions of employment, including, *inter alia*, terminating Plaintiffs due to their engaging in protected activity of discussing and requesting leave available to Plaintiffs because of their gender and pregnancy.

100.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law.

101.    Defendants' unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiffs are entitled to an award of punitive damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant for the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate federal law and the laws of the State of New York and the City of New York;

B.    An award of damages against Defendant, in an amount determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, loss of past and future income, wages, compensation, seniority and other benefits of employment;

C.    An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages including, but not limited to, compensation for Plaintiffs' emotional distress;

D.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs, including but not limited to, loss of income and other damages flowing

from it, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

     E.     An award of punitive damages and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

     F.     Prejudgment interest on all amounts due;

     G.     An award of Plaintiffs' reasonable attorneys' fees and costs; and

     H.     Such other further relief as the Court may deem just and proper.

Dated:    New York, New York
          August 21, 2020

**BARTON LLP**

By: _____
     Scott G. Grubin
     Rita Lenane-Massey

711 Third Avenue, 14th Floor
New York, NY 10017
Tel.: (212) 687-6262
sgrubin@bartonesq.com
rlmassey@bartonesq.com

*Attorneys for Plaintiffs*

20